IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ERIC GEORGE GOLDEN, #B05324** )<br>)<br>**Plaintiff,** )<br>vs. )<br>)<br>**ROB JEFFREYS,** )<br>**JOHN BALDWIN,** )<br>**JANET JAIMET,** )<br>**LARUE LOVE,** )<br>**CHRISTOPHER THOMPSON,** )<br>**PERCY MYERS,** )<br>**CHRISTINE BROWN,** )<br>**DAN VAREL,** )<br>**CHARLENE HALE,** )<br>**AMY BURLE,** )<br>**SARAH JOHNSON,** )<br>**LT. WALLS,** )<br>**LT. BAKER,** )<br>**C/O FLATT,** )<br>**ALISA DEARMOND, and** )<br>**WEXFORD HEALTHCARE CO.,** )<br>)<br>**Defendants.** ) | Case No. 3:21-cv-01205-SMY |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Eric George Golden, an inmate of the Illinois Department of Corrections, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Pinckneyville Correctional Center. This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A. Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

## Complaint

Golden makes the following allegations in the Complaint:[1] Upon arrival at Pinckneyville Correctional Center on September 13, 2017, Golden had a medical permit for the following: low bunk, low gallery, daily shower, waist chain, gym shoes, slow walk, no stairs, extra mattress and pillow, no leg irons[2] (Doc. 1, pp. 10, 16). A few days later, Dr. Myers issued orders for a medical permit in an Offender Outpatient Progress Note that included special gym shoes/boots (*Id.*, pp. 10, 17). When the Pinckneyville medical permit was written, it did not include the boots, leg iron restriction, extra mattress, or extra pillow like his prior medical permit (*Id.*, pp. 10, 18). It listed only "gym shoes, shower chair, daily shower, waist chains, low bunk, and low gallery."

Golden complained to an LPN in November 2017 that he wanted his Stateville permit that provided for an extra pillow (*Id.*, pp. 10, 19). A few days later, he complained to another medical provider that he needed an extra pillow and extra mattress (*Id.*, pp. 10, 20). Golden received a note from Christine Brown stating that his mattress and extra pillow had been ordered and should be received the next week (*Id.*, pp. 10, 21). After several weeks of complaining about not receiving the mattress and pillow, Golden received a Counseling Summary indicating that the Health Care Unit Administrator stated the mattress and pillow had been ordered (*Id.*, pp. 10, 22). He was given a medical permit for an air mattress in December 2017 (*Id.*, pp. 10, 23). The seam opened on the air mattress the night he received

---

[1] Throughout the Complaint Golden references exhibits instead of setting forth factual allegations (e.g. "Ex. 1-B was my A.D.A. accommodations upon my arrival at Pinckneyville C.C." (Doc. 1, p. 10). In this instance, the Court will review the exhibits for the factual allegations. However, in the future, Golden should set forth his factual allegations in his pleadings and refer to exhibits only as necessary to support those allegations.

[2] Golden attached a copy of a Stateville Correctional Center Medical Permit dated June 12, 2017 that lists these items and additional items that are not legible due to the poor quality of the copy. (Doc. 1, p. 16).

it, and he was sleeping on steel by the next morning.

Golden was taken to segregation for intimidation, threat, and disobeying a direct order on January 15, 2018 (*Id.*, p. 10). Lt. Wall told him that he could not keep his gym shoes. Golden showed him his permit and told he that as an amputee, he could not wear the state issued shoes. Lt. Wall called Christine Brown who stated that there was no medical reason for Golden to keep the gym shoes (*Id.*, pp. 10-11). Lt. Wall threatened to forcibly remove the shoes (*Id.*, p. 11).

For several days, Golden walked around with no shoes or prosthetic, which caused a callus to grow on his stump. He received a notice that his tan medical boots, 2 prosthetic sleeves, and 10 prosthetic socks had been sent to the healthcare unit (HCU) for approval (*Id.*, pp. 11, 25). He received a notice 3 days later that there was no authorization or medical reason on file for the medical boots and that his prosthetic sleeves and prosthetic socks were deemed excessive by HCU (*Id.*, pp. 11, 26). He could not maintain the cleanliness of his stump.

Golden filed a grievance on the matter (*Id.*, p. 11). Grievance officer Flatt came to his cell personally and told him that he won the grievance, but never returned the grievance. He wrote a letter to Warden Love on January 20, 2018, explaining that his boots were "medical issued boots" ordered by the Stateville Medical Director and paid for by Wexford (*Id.*, pp. 11, 28).

Golden filed a grievance on February 26, 2018, complaining that Flatt had advised him he won his grievance regarding the boots and they would be placed back in his property but that had not happened (*Id.*, pp. 11, 29). Counselor Hess responded that the HCUA stated there was no medical need for the boots as he has high top gym shoes. He was sent to PT Dan Varel for an assessment regarding his supplies including the boots (*Id.*, pp. 11-12, p. 30).

Golden wrote a letter to Warden Thompson on March 18, 2018 regarding his medical boots (*Id.*, pp. 12, 31). Warden Thompson responded that the boots would be dyed black and returned to Golden shortly and asked him to be patient. He wrote to Warden Jaimet and received a response dated April 13, 2018 that states only "issue resolved" (*Id.*, pp. 12, 32). The ARB denied his grievance regarding confiscation of his gym shoes, boots, 2 prosthetic sleeves, 10-15 stump socks, and 2 stump compressors (*Id.*, pp. 12, 33). The ARB response, signed by Sarah Johnson and John Baldwin, states that healthcare staff indicated the boots were not medically indicated and that he was provided a permit for 8 stump socks, 2 stump liners, and 1 stump compression sleeve.

Golden was sent to unit 3 where Lt. Baker got angry because he was writing grievances and constantly complaining about his boots (*Id.*, p. 12). One day, Lt. Baker decided Golden could not have his ADA showers anymore because "he walk too good" (*Id.*). Golden grieved that issue (Ex. 18) and Amy Burle and John Baldwin failed to do the right thing (*Id.*, pp. 12, 35). Lt. Baker began to harass him and "walked him out" on false allegations again (*Id.*, pp. 12, 36). Grievance officer Charlene Hale did not investigate the grievance and did what Lt. Baker wanted (*Id.*, p. 12). There is a pattern of behavior promoted by Wexford medical providers to deny serious medical treatment.

Alisa Dearmond FNPC was used by security staff to change and manipulate records and permits (*Id.* p. 13). She discontinued Golden's waist chain permit (*Id.*, pp. 13, 39) because the Lt. wanted to put him in a blue box during a medical furlough. She also re-wrote his medical permit to state "left prosthetic device needs gym shoes/leather boot on it at all times" to force him to send his boots home (*Id.*, pp. 13, 42).

Based on the allegations in the Complaint, the Court designates the following claims in

this *pro se* action:[3]

    Count 1:    Eighth Amendment claim against Defendants for exhibiting deliberate indifference to Golden's serious medical needs by denying Golden, who is an amputee, items that he requires as a disabled person including gym shoes, special boots, prosthetic socks, prosthetic sleeves, extra pillow, extra mattress, shower chair, daily showers, and a waist chain permit.

    Count 2:    Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. and Rehabilitation Act ("RA"), 29 U.S.C. § 701, *et seq*.[4] claim against Defendants for denying Golden, who is an amputee, items that he requires as a disabled person including special boots, prosthetic socks, prosthetic sleeves, extra pillow, extra mattress, shower chair, and daily showers.

    Count 3:    Fourteenth Amendment claim against Defendants Flatt, Hess, Sarah Johnson, Amy Burle, and John Baldwin for denying Golden's grievances.

    Count 4:    Fourteenth Amendment claim against Defendants for deprivation of personal property.

## Discussion

### Count 1

Prison officials and medical staff violate the Eighth Amendment's prohibition on cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state a claim, a prisoner must allege facts suggesting that (1) he suffered from an objectively serious medical condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Id.*

---

[3] Any claim mentioned in the Complaint but not addressed in this Order is dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

[4] Although Golden mentions only the ADA, "the [RA] is available to him, and courts are supposed to analyze a litigant's claims and not just the legal theories that he propounds, especially when he is litigating *pro se*." *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012) (internal citations omitted).

The Complaint fails to allege facts suggesting deliberate indifference to a serious medical need by any defendant. Golden does not allege what injuries or damages he suffered other than inconvenience. Nor does he indicate how the discontinuation of his waist chain permit affected him. Finally, he does not state that he advised anyone his mattress deflated the first night he used it. For these reasons, Count 1 will be dismissed for failure to state a claim.

### Count 2

As an initial matter, individual employees of IDOC cannot be sued under the ADA or the RA. *Jaros v. Illinois Dep't of Corrs*, 684 F.3d 667, 670 (7th Cir. 2012). Instead, the proper defendant is the relevant state department or agency. *See* 42 U.S.C. § 12131(1)(b); *Jaros*, 684 F.3d at 670, n. 2 (individual capacity claims are not available; the proper defendant is the agency or its director (in his official capacity)). Here, the proper defendant is Rob Jeffreys, in his official capacity as the IDOC Director. To the extent Golden seeks to bring this claim against any other defendant, they are dismissed.

The ADA confers rights on "qualified individual[s] with a disability" who are denied access to "services, programs, or activities of a public entity." 42 U.S.C. § 12132. This includes denial of access to medical services on the basis of disability. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). However, "[a] claim for inadequate medical treatment is improper under the ADA." *Resel v. Fox*, 26 F.App'x. 572, 577 (7th Cir. 2001); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice."). The basis for Golden's ADA/RA claim is unclear. If it's merely the denial of excess property, that is insufficient to state a claim. Thus, Count 2 will be dismissed.

### Count 3

Golden asserts a claim against grievance officials Flatt, Hess, Sarah Johnson, Amy

Burle, and John Baldwin based on their denial of his grievances. Prison officials incur no liability under § 1983 if they fail or refuse to investigate a prisoner's complaints or grievances. *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). And "[p]rison officials who simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance." *Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017). Accordingly, Count 3 will be dismissed for failure to state a claim.

### Count 4

To state a property loss claim under the Fourteenth Amendment, a plaintiff must allege a deprivation of liberty or property without due process of law. If the state provides an adequate remedy, a plaintiff has no civil rights claim. *Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy). Because Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims (See, *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999)), Golden must pursue any claims for the loss of his property in the Illinois Court of Claims. Therefore, Count 4 will also be dismissed.

### Disposition

The Complaint is **DISMISSED without prejudice** for failure to state a claim for relief. Golden is **GRANTED** leave to file a First Amended Complaint by **June 10, 2022**. The First Amended Complaint will be subject to review under 28 U.S.C. § 1915A.

Should Plaintiff file a First Amended Complaint, it is strongly recommended that he use the civil rights complaint form designed for use in this district. He should label the form "First Amended Complaint" and use the case number for this action (No. 21-1205). Further,

Golden should identify each defendant in the case caption and include sufficient allegations against each defendant to describe what the defendant did or failed to do to violate his constitutional rights, *see DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (a successful complaint generally alleges "the who, what, when, where, and how ...."), and as much as possible, include the relevant facts in chronological order, inserting each defendant's name where necessary to identify the actors and each defendant's actions. To facilitate Plaintiff's compliance with this Order, the Clerk of Court is **DIRECTED** to mail Plaintiff a civil rights complaint form.

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004). Therefore, the Court will not accept piecemeal amendments to a previously filed Complaint. Instead, the First Amended Complaint must stand on its own, without reference to any previous pleading. Plaintiff should attach any exhibits that he wishes to submit with the First Amended Complaint.

If Plaintiff fails to file his First Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, the case will be dismissed with prejudice for failure to state a claim for relief, failure to comply with a court order, and for failure to prosecute his claims. *See* Fed. R. Civ. P. 41(b); *Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2). The dismissal will count as a "strike" under 28 U.S.C. § 1915(g).

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. See Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  May 11, 2022**

<div style="text-align:right">

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**

</div>